[No. 3591.]

CHAP LOVING v. THE STATE.

THEFT — POSSESSION OF RECENTLY STOLEN PROPERTY — EVIDENCE.— To con-
fute the presumption arising against him by reason of his possession of
the recently stolen property, the defendant not only proved his reasonable
explanation of his possession when it was first questioned, but introduced a
witness who testified to the truth of that explanation. The State, in order
to disprove the truth of such explanation, impeached the witness by show-
ing that he had, elsewhere and previous to the trial, denied that he knew
anything about the case. Held, that such evidence is not sufficient to dis-
charge the State's burden of disproving the defendant's explanation. It is
the truth of the explanation, whether supported by evidence or not, the
same being reasonable, that must be disproved.

APPEAL from the District Court of Montague. Tried below be-
fore the Hon. F. E. Piner.

The conviction was for the theft of three head of cattle, the
property of Mrs. Martha Green, in Montague county, Texas, on the
20th day of December, 1883. The penalty imposed by the jury
was a term of three years in the penitentiary.

The first witness for the State was young Mr. Green, the son of
the prosecutrix. He testified that he lived with his mother on her
place, near Montague, in Montague county, during the month
of December, 1883. Between the 15th and 20th days of that
month, the witness's mother lost three head of cattle from her
farm. These cattle came up regularly until their disappearance.
Witness was not at home when the cattle were driven off. The
cattle, when taken, were the property of Mrs. Martha Green, and
were in her possession. One of them was a red and white "pied"
yearling steer; the second a red and white heifer yearling, and the
third a brown heifer yearling. Neither of these animals was
branded when they disappeared, but the steer was marked with a
crop off each ear. The witness next saw these cattle in April,
1884, when they came back to his mother's house, branded U C on
the left side. Three days later W. G. Conner came to Mrs. Green's
place, hunting the animals, and claimed them. Witness at no time
consented that any one should take these cattle. His mother's name
was Martha Green. He knew of no woman in Montague county
named Martha A. Green.

Mrs. Martha Green testified, for the State, that the cattle de-
scribed in the indictment, which belonged to her and which were in
her possession, running on her place in Montague county, disappeared

on or about the 18th day of December, 1883. Witness had never sold or given these cattle away, or consented that any one should take them. The steer was marked as stated by the previous witness, but neither was branded when they disappeared. Witness next saw them in April, 1884, when they came home, branded U C on their left sides. Soon after the return of these cattle, W. G. Conner and John Loving came to the witness's house, and Conner said that he had lost three head of cattle which he had been told were at the witness's house. Witness had these animals driven up, and she, Conner and John Loving examined them.

W. G. Conner testified, for the State, that between the 25th and 30th of December, 1883, he bought the three yearlings involved in this prosecution from John Loving, and drove them to his place about seven miles distant from Bowie, in Clay county, where he put them in his brand, U C, and turned them into a field to locate them. When turned out in the spring they strayed off. Witness, some time in April, 1884, heard of them at Mrs. Martha Green's place in Montague county. He then got John Loving to go with him to Mrs. Green's for them. Arriving at Mrs. Green's, witness and John Loving drove them up to her house, and had a conversation with her about them.

John Loving testified, for the State, that he bought the said three head of yearlings from the defendant in the town of Bowie, and paid him thirty or thirty-five dollars for them. Defendant told witness that he bought the yearlings from a man named Henry James, who was passing through the country with a herd of cattle. He showed the witness a piece of paper with marks on it, which he said was the bill of sale he received from James. Witness did not read it. Within a day or two after his purchase, witness sold the yearlings to W. G. Conner. The State closed.

Joe Graham testified, for the defense, that, *en route* home from Bowie, late in December, 1883, or early in January, 1884, he met the defendant about two miles from the town of Bowie. At that point, which was near Brushy Mound, they encountered a man who gave his name as Henry James. James had a herd of twenty-five or thirty head of cattle with him. From this man the defendant bought three yearlings, corresponding with the description of those involved in this prosecution. The defendant took a bill of sale from James, and paid him between twenty-five and thirty dollars for the cattle. Witness had never seen James before, nor had he seen him since. Besides the principals to the trade, and witness, a man named Jones and Felix Sebastian were present.

Cross-examined, the witness said that the Felix Sebastian referred to had been subpœnaed as a witness in this case, but was not present. He was on the defendant's ranch in Cottle county and in the defendant's employ. Witness was present under attachment executed by Deputy-sheriff Blalock of Clay county. The witness had forgotten all about the transaction between defendant and James, or, rather, that incident had not recurred to his mind since it occurred until he was attached in this case. The transaction occurred at the time and place, and in the manner stated. The witness denied that he passed the Sunday night previous to this trial with John Stotts, and told Stotts that he knew nothing whatever about the transaction with James, and could not imagine why defendant had him attached.

John Stotts testified, for the State, in rebuttal, that the witness Joe Graham spent the preceding Sunday night with him, and en route to court next day told witness that he was an attached witness in this case, but knew nothing about it, and could not imagine why the defendant had procured his attachment.

The questions discussed in the opinion were presented by the motion for new trial.

*George S. Walton,* for the appellant.

*J. H. Burts,* Assistant Attorney-General, for the State.

Hurt, Judge. Appellant was tried and convicted for the theft of three head of cattle, the property of Mrs. Martha Green.

For conviction the State relied, 1st, upon the fact that some person had stolen the cattle; 2d, possession by defendant recently after the theft, etc. The rule governing such a case is, 1st, the *corpus delicti*, that is, that the property was stolen by some person; 2d, recent possession; 3d, failure to explain, when called upon circumtially or directly, to explain.

In this case defendant not only gave a reasonable explanation of his possession, but proved by a witness that his explanation was true. This he was not required to do. The State, however, impeached the witness by proving by a witness that defendant's witness had stated that he knew nothing of the matter, and that he did not know why defendant wanted him as a witness, etc.

Now, let us concede that under this state of case the jury were authorized to disregard altogether the evidence of the witness by whom defendant proved his explanation to be true, still there stands the explanation of the defendant, reasonably accounting for his

possession of the cattle, consistently with his innocence. This explanation being reasonable, the State must prove it to be false. Nor will this burden be discharged by showing that a witness, introduced by the defendant for the purpose of proving the truth of his explanation, has denied any knowledge of the matter, or has made contradictory statements with regard to the same.

The State's case is, therefore, simply one of recent possession, with reasonable explanation, with no proof by the State of the falsity of the explanation. This being the case, the evidence is not sufficient to convict, and hence the verdict of the jury was not supported by the evidence.

It is not necessary for us to discuss the action of the court in overruling appellant's motion to continue, or the overruling of the motion for new trial based upon this matter, as a new trial will rid the case of these questions. The judgment is reversed and the cause remanded.

*Reversed and remanded.*

[Opinion delivered June 13, 1885.]